# OFFICE OF THE FEDERAL PUBLIC DEFENDER
# FOR THE NORTHERN DISTRICT OF NEW YORK

Syracuse Office

4 Clinton Square
3RD FLOOR
SYRACUSE, NY 13202
(315) 701-0080
(315) 701-0081 FAX

Albany Office

54 State St.
3RD FLOOR
ALBANY, NY 12207
(518) 436-1850
(518) 436-1780 FAX



October 10, 2023

Hon. Brenda K. Sannes
Chief United States District Judge
James M. Hanley Federal Building
100 S. Clinton St.
Syracuse, NY 13202

          RE:    **United States v. Joseph Morelli**
                   **Case No.: 22-CR-115 (BKS)**

Dear Judge Sannes:

      On September 25, 2023, the Government filed a supplemental letter brief related to the issue of restitution in this case. Despite the Government's efforts to demonstrate causation, the link between Congresswoman Greene's expenditures and Morelli's conduct remains non-existent. The Government continues to fail to establish that Morelli's conduct was the direct and proximate cause of Congresswoman Greene's losses.

      As part of the Government's submission, Exhibit 1 contains a "timeline of events." Although this timeline lists Mr. Morelli's threats as the first event on the timeline, chronologically speaking, the first event was Congresswoman Greene's retention of a private security group in mid-January 2022. This occurred months before Mr. Morelli ever left the voicemails at her Washington D.C. office. The Government's timeline fails to explain what spurred the retention of a private security group, but it would be temporally impossible for it to have been connected in any way to Morelli or his conduct.

      Exhibit 1 further notes that in May 2022, "Jason Boles and Travis Loudermilk began augmenting personal security around Congresswoman Greene." There is no explanation as to who Boles or Loudermilk are, how they augmented her security, or what location they performed any security work. It is entirely possible that her security was augmented around this time because it coincided with the primary elections in Georgia, which Congresswoman Greene won in late May 2022. Exhibit 1 goes on to provide that in May/June of 2022, Greene did "research and legal inquiry" into whether she could use campaign funds to pay for the fence around her personal residence in Georgia. While this expenditure was not illegal, it does remain

disconnected from Morelli's conduct both factually and temporally, especially because according to Exhibit 1, the fencing company wasn't even contacted until October 2022. Seven months passed between Morelli's voicemails and any form of contact with a fencing company. Nine months passed before the fencing work commenced. During this time, Congresswoman Greene continued to engage in politically divisive rhetoric and persisted in her persona of a controversial public figure who often speaks in violent terms. The work on the security cameras is also factually and temporally distant from Morelli's conduct, occurring in September 2022, with "upgrades and adjustments" being performed on pre-existing cameras. Exhibit 1 notes that there was no request for work on the pre-existing cameras until September 2022, a full six months after Morelli's conduct ceased.

      The Government asserts that the instant case is analogous to *Paroline v. United States*, 572 U.S. 424 (2014), in that here, there were "from time to time, other threats from other individuals in addition to the defendant." This statement is at odds with Congresswoman Greene's assertion that she receives "violent threats" against her life "every day." *See* Statement: Congresswoman Marjorie Taylor Greene Responds to Democrat Smear Campaign, December 12, 2022, *available at* https://greene.house.gov/news/documentsingle.aspx?DocumentID=276. The Government again characterizes Morelli's conduct as the "straw that broke the camel's back." Through her own words, Congresswoman Greene has indicated otherwise, instead painting a picture of a camel long-saddled with violent threats occurring on a daily basis. Morelli has become a scapegoat for Congresswoman Greene, because he was prosecuted federally, and his case received media attention. The fact that others who engaged in this conduct may not have been prosecuted, or their prosecutions may not have received media attention, does not diminish the fact that Morelli is not the but-for cause of these expenditures. In fact, even if he were the only person ever to be prosecuted for threatening Greene, her restitution claim would still fail, because of the non-existent link between his conduct and her expenditures.

      The Government recognizes that it must show that a particular loss would not have occurred but-for Morelli's conduct, *and* that the connection between the conduct and the loss is not too attenuated, factually or temporally. The Government has continued to fail to demonstrate a but-for cause in this scenario, and the Government's own timeline itself demonstrates that the loss is incredibly attenuated from the conduct both temporally and factually.

      Additionally, Congresswoman Greene continues to use incendiary language and engage in threats of violence herself, further illustrating her penchant for the type of violent language that tends to perpetuate violent rhetoric. In September 2023, Congresswoman Greene herself told attendees at a town hall in Floyd County that Morelli had pled guilty to "murdering her" or "hiring someone" to do so, and as a result was sentenced to three months in prison. She further told attendees that if he showed up at her house he would be met with a "wall of bullets" because she is a "big believer in semi-automatic AR-15's." *See, Marjorie Taylor Greene Issues AR-15 Warning to Anyone Who Wants to Kill Her*, NEWSWEEK, Sept. 3, 2023, *available at* https://www.newsweek.com/marjorie-taylor-greene-issues-ar-15-warning-anyone-who-wants-kill-her-1824220. When Congresswoman Greene tweeted a video recording of the town hall out to her followers, she expanded the group of people who would be "met with a wall of bullets" to include "anyone" who tries to do "anything" to her. Violent rhetoric begets violence and more violent rhetoric. Mr. Morelli has taken responsibility for his threats by pleading guilty in this

case, and he has been sentenced to prison. He cannot also be made to take responsibility for Congresswoman Greene's additional security when his conduct clearly did not cause her to install it.



      Greene's expenses remain far too attenuated from Morelli's conduct for this Court to order restitution. Greene's history and penchant for engaging in divisive and despicable speech, paired with the reputation she has sown for herself and the amount of publicity and threats she receives, all demonstrate that Morelli is not the but-for cause of her security expenditures, and as such her request for restitution must be denied.

Respectfully submitted,

Gabrielle DiBella
Asst. Federal Public Defender

cc:    Richard Southwick, AUSA, by ECF
        Joseph Morelli, by mail