UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.                                                                                              3:22-cr-115 (BKS)

JOSEPH MORELLI,

                              Defendant.
_____

**Appearances:**

*For the United States of America:*
Carla B. Freedman
United States Attorney
Richard R. Southwick
Assistant United States Attorney
100 South Clinton Street
Syracuse, New York 13261

*For Defendant Joseph Morelli:*
Lisa A. Peebles
Federal Public Defender
Gabrielle DiBella
Assistant Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Defendant Joseph Morelli was charged with three counts of transmitting interstate threatening communications to the office of a member of the United States House of Representatives in violation of 18 U.S.C. § 875(c). (Dkt. No. 21.) On February 1, 2023, Defendant pleaded guilty to those three counts. On September 5, 2023, Defendant was sentenced to imprisonment for a term of three months on each count to be served concurrently, followed by

supervised release for a term of three years on each count to be served concurrently. (Dkt. No. 72.) The Presentence Report indicated that the target of Defendant's offenses, Congresswoman Marjorie Taylor Greene, is seeking restitution. (Dkt. No. 68, at 36.) The Government and Defendant filed briefing responsive to the issue of restitution. (Dkt. Nos. 62, 64, 65.) After reviewing this briefing, the Court found that the record was insufficient to determine whether the offenses of conviction directly and proximately caused the harm for which restitution was sought. (Dkt. No. 70.) At sentencing, the Court deferred ordering restitution pending further information from counsel. The Government and Defendant subsequently filed supplemental briefing on the issue. (Dkt. Nos. 76, 79.) On November 2, 2023, the Court held an evidentiary restitution hearing at which the Government and Defendant presented witnesses. Based on the following findings of fact and conclusions of law, the request for restitution is denied.

## II.   FACTS

The Court makes the following findings of fact based on witness testimony given and exhibits admitted at the November 2, 2023 hearing, (Dkt. Nos. 90, 91), the parties' submissions, (Dkt. Nos. 62, 64, 65, 76, 79), and documents in the record.[1] At the hearing, the Court heard the testimony of Barry Travis Loudermilk, District Director for Congresswoman Greene, and John O'Brien, Investigator for the Office of the Federal Public Defender for the Northern District of New York. To the extent discrepancies in testimony arose, the Court resolves those discrepancies as set forth below.

---

[1] The Court notes that orders of restitution are a component of sentencing, *see* 18 U.S.C. § 3663A(a)(1)(A), and that hearsay evidence may be considered during sentencing so long as it bears minimal indicia of reliability, *see United States v. Martinez*, 413 F.3d 239, 244 (2d Cir. 2005).

A.     **Procedural Background**

On March 15, 2022, proceedings against Defendant were initiated by the filing of a criminal complaint alleging that Defendant transmitted interstate threatening communications in violation of 18 U.S.C. § 875(c). (Dkt. No. 1, at 1.) The affidavit in support of the criminal complaint alleged that, on March 3 and 4, 2022, Defendant left seven voicemail messages at the Washington, D.C., office of Congresswoman Greene threatening to injure or kill her or threatening to hire others to injure or kill her. (*Id.* at 3–5.) Defendant was arrested on March 16, 2022, and released on pretrial conditions on March 22, 2022. On April 6, 2022, Defendant was indicted on three counts of transmitting interstate threatening communications in violation of 18 U.S.C. § 875(c) for voicemails left on March 3, 2022, at 11:11 p.m., 11:18 p.m., and 11:24 p.m. (Dkt. No. 21.)

Defendant's trial was initially scheduled for June 13, 2022, (Dkt. No. 26), but after multiple requests to continue, (Dkt. Nos. 27–33), trial was ultimately scheduled for February 6, 2023, (Dkt. No. 34). On February 1, 2023, Defendant pleaded guilty to the three counts in the indictment, and Defendant remained released on conditions pending sentencing. (Text Minute Entry dated Feb. 1, 2023.) On August 24, 2023, Defendant was sentenced to imprisonment for a term of three months on each count to be served concurrently beginning October 2, 2023, followed by supervised release for a term of three years on each count to be served concurrently. (Dkt. No. 72.)

Mr. Loudermilk, who is in charge of handling threats that Congresswoman Greene receives by reviewing staff members' notes about threats and referring them to the United States Capitol Police Threat Assessment Division for investigation was contemporaneously made aware by the Government of the progress of Defendant's case and would inform Congresswoman Greene of any updates. (*See* Dkt. No. 76, at 2.)

B.  **Threats and Enhanced Security Measures**

At the restitution hearing, both witnesses testified as to the frequency and timing of threats Congresswoman Greene received and the chronology of personal security measures she undertook. Defendant presented the following social-media posts by Congresswoman Greene. On September 23, 2020, before she took office on January 3, 2021, Congresswoman Greene posted a threat that was made against her and her family. In a posting on January 28, 2021, Congresswoman Greene said that she received "multiple death threats each and every day." In a post dated July 21, 2021, Congresswoman Greene said that "the death threats haven't stopped since" she was kicked "off committees." On November 13, 2021, Congresswoman Greene wrote that she and her staff "receive nasty calls, death threats [and] wishes all the time." A post by Congresswoman Greene on December 3, 2021, contained audio recordings of specific death threats, one of which included the name and telephone number of the person making the threat.

In January 2022, Congresswoman Greene hired a private security company, Kajor Group, to provide personal security services. Travor Willis, the owner of Kajor Group, stated in a conversation with Mr. O'Brien that he was aware that Congresswoman Greene received multiple threats daily, beginning before she retained Kajor Group and continuing throughout her retention of Kajor Group. Mr. Willis called the threats Congresswoman Greene received "action" threats, which, he explained to Mr. O'Brien, involved people stating they were going to do something as opposed to merely hoping that she would be injured or killed.

Mr. Loudermilk testified that Congresswoman Greene's staff and Capitol Police similarly differentiated between "direct" threats, which involve a person expressing intent to do harm to her, and "indirect" threats, which involve a person expressing hope that harm will befall Congresswoman Greene. Mr. Loudermilk testified that the majority of threats she has received have been indirect threats.

In February or March 2022, an individual knocked on the door of Congresswoman Greene's Georgia residence and left an unsolicited package. Kajor Group informed local police of the incident, and local police handled the matter. Mr. Loudermilk testified that this individual was a "superfan" of Congresswoman Greene. Around this time, on March 3, 2022, Defendant made the voicemail threats to Congresswoman Greene's office. Defendant was arrested on March 16, 2022, and released on pretrial conditions on March 22, 2022; he remained released until his prison sentence began on October 2, 2023.

Congresswoman Greene discontinued her retention of Kajor Group in April 2022 because it was prohibitively expensive. Soon thereafter, Mr. Loudermilk and another staff member, Jason Boles, began traveling with Congresswoman Greene for extra protection. Around this time, Congresswoman Greene requested full-time personal security from Capitol Police, but Capitol Police denied her request.

Congresswoman Greene was aware, via Mr. Loudermilk, of at least two other criminal proceedings other than Defendant's involving threats against her. One involved an individual in Florida that included deportation proceedings. The other involved an individual in Colorado who made threats against Congresswoman Greene around August 2022. Mr. Loudermilk testified that the Colorado case involved threats made to other Representatives in addition to Congresswoman Greene but that at the time the threats were made, he was only aware of the threats made against Congresswoman Greene. Mr. Loudermilk also testified that he did not follow up on the status of the Colorado case and that he was therefore unaware of any plea or sentencing in that case.

Mr. Loudermilk testified that Congresswoman Greene's staff began looking into whether campaign funds could be used for personal security expenses in May or June 2022. In September 2022, Congresswoman Greene hired Echo Technologies to increase security at her Georgia

residence by enhancing an existing security-camera system. An invoice and receipt from Echo Technologies demonstrate that on October 5, 2022, Congresswoman Greene paid $1,375.00 to "reposition, re-aim, and reconfigure" her closed-circuit television system. (Dkt. Nos. 64-4, 64-5.)[2]

Congresswoman Greene's staff concluded that campaign funds could be used for personal security expenses around October 2022. Sometime during that month, she contacted Bartow Fence Company about constructing a fence at her Georgia residence. Bartow Fence visited the property and prepared an estimate for the work around October 12, 2022, and began work on the fence in December 2022. Mr. Loudermilk testified that planning for the fence and awaiting delivery of materials accounted for the delay between contacting Bartow Fence in October 2022 and construction of the fence beginning in December 2022. An invoice from Bartow Fence and a wire transfer receipt demonstrate that Congresswoman Greene paid $65,257.49 on March 24, 2023, for materials and labor required for installation of the fence at her Georgia residence. (Dkt. Nos. 64-2, 64-3.) The money for payments for the security-camera system and the fence came from Congresswoman Greene's campaign funds.

Defendant presented additional social-media posts by Congresswoman Greene in late 2022 and early 2023. On December 12, 2022, Congresswoman Greene posted that "[e]very day," she "receive[s] violent threats against [her] life[,] . . . including . . . threats against [her] home in an attempt to have [her] killed." On February 2, 2023, she posted that "[m]ultiple people who want to kill me have been arrested." Congresswoman Greene did not seek restitution in any criminal case other than Defendant's.

---

[2] The costs itemized in the invoice are for labor and a "data drop," (Dkt. No. 64-5); there is no indication that cameras were added. The Court does not, therefore, credit Mr. Loudermilk's testimony that Echo Technologies added cameras to the security-camera system.

6

**III.    DISCUSSION**

Congresswoman Greene seeks restitution in the amount of $66,632.49, including $65,257.49 for construction of a security fence, (Dkt. No. 64-3), and $1,375.00 for repositioning and reconfiguration of existing security cameras, (Dkt. No. 64-5), at her private residence in Georgia. Defendant opposes this request and argues that Defendant's offenses were neither the direct nor proximate cause of these costs. (Dkt. Nos. 62, 65, 79.) At the restitution hearing, Defendant also argued that the restitution sought is not covered by the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. The Government argues that Defendant's offenses were the direct and proximate cause of Congresswoman Greene's expenses, (Dkt. Nos. 64, 76), and at the restitution hearing, the Government argued that the expenses incurred are covered by the MVRA.

"[T]he purpose of restitution is essentially compensatory: to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury." *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006) (citing *Hughey v. United States*, 495 U.S. 411, 416 (1990)). The MVRA, 18 U.S.C. § 3663A, provides that, where a defendant is convicted of, inter alia, any offense that is a "crime of violence" as defined in 18 U.S.C. § 16 and "in which an identifiable victim . . . has suffered a physical injury or pecuniary loss," the court "*shall* order . . . that the defendant make restitution to the victim of the offense." 18 U.S.C. §§ 3663A(a)(1), (c)(1) (emphasis added). In such circumstances, the court must "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). "However, the award cannot 'allow[] a victim to recover more than his due.'" *United States v. Calonge*, No. 20-cr-523, 2022 WL 1805852, at *5, 2022 U.S. Dist. LEXIS 98301, at *17 (S.D.N.Y. June 1, 2022) (quoting *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011)).

7

Orders of restitution under the MVRA are "issued and enforced in accordance with section 3664." 18 U.S.C. § 3663A(d). Under § 3664, the Government bears the burden of demonstrating, by a preponderance of the evidence, "the amount of the loss sustained by a victim as a result of the offense." *Id.* § 3664(e); *see also Goodrich*, 12 F.4th at 231. Where whether a particular loss "was 'sustained . . . *as a result*' of [an] offense" is at issue, the Government also bears the burden of proving causation. *See Goodrich*, 12 F.4th at 231 (first alteration and emphasis in original) (quoting 18 U.S.C. § 3664(e)). "The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires." 18 U.S.C. § 3664(e).

### A.     Loss of Property

At the restitution hearing, Defendant argued that the restitution sought does not fall within any of the categories of harms for which restitution is mandatory under the MVRA. The Government argued that the restitution sought is compensable as a pecuniary loss and cited 18 U.S.C. § 3663A(c)(1)(B) in support of that position. When questioned by the Court as to which provision of § 3663A(b) applied to the restitution sought, the Government argued that Congresswoman Greene expended monies in response to Defendant's conduct and that restitution therefore falls under § 3663A(b)(1).

Federal courts "have no inherent authority to order restitution"; they have only the authority provided by Congress. *See United States v. Maynard*, 743 F.3d 374, 379 (2d Cir. 2014). In *Maynard*, the Second Circuit held that only harms that are listed in 18 U.S.C. § 3663A(b) are compensable under the MVRA. *See id.* ("If Congress intended to include all harms directly and proximately caused by a defendant's offense, it could have done so with wording more simple and categorical.") As relevant here, where an "offense result[ed] in . . . loss . . . of property of a victim of the offense," the MVRA authorizes restitution in an amount equal to "the greater of . . .

the value of the property on the date of . . . loss, or . . . the value of the property on the date of sentencing." *See* 18 U.S.C. §§ 3663A(b)(1).[3]

The record before the Court makes clear that Congresswoman Greene did not suffer a loss of property, as contemplated by the MVRA, as a result of Defendant's offenses. Rather, Congresswoman Greene—or, more accurately, her campaign—expended money for personal security enhancements. Controlling Second Circuit law makes clear that such an expenditure is not a loss of property under § 3663A(b)(1). *See Maynard*, 743 F.3d at 380 (finding that "[t]he only category of allowable expense in which . . . security . . . might be located is § 3663A(b)(4)" before concluding that such expenses are not compensable under the MVRA). The Government, in its briefing, (Dkt. No. 64, at 2), and at the restitution hearing, relied on *United States v. McNeil*, 744 F. App'x 941 (6th Cir. 2018), for the proposition that "costs of . . . security systems have been recognized as expenses for which restitution may be ordered under the MVRA." *McNeil*, however, is an unpublished, out-of-circuit decision that did not consider the question at issue here—whether the expenses sought are compensable under the MVRA. *See McNeil*, 744 F. App'x at 943–44. And the issue here was the precise issue addressed in *Maynard*: whether expenditures for security measures are compensable under the MVRA given the exhaustive list of compensable harms in § 3663A(b). *See Maynard*, 743 F.3d at 378, 382 ("The decisive issue on this appeal is whether expenses other than those enumerated in § 3663A(b) are compensable under the MVRA. We conclude they are not. . . . Because [private security] expenses . . . do not

---

[3] Section 3663A(b) contains three other categories of harms compensable under the MVRA. Two involve either bodily injury or death, *see id.* §§ 3663A(b)(2), (3), and are plainly inapplicable here where no bodily injury or death occurred. The third involves "necessary . . . expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." *Id.* § 3663A(b)(4). The Government does not argue that the expenses at issue are compensable under that subsection, and any such argument would be unavailing because the personal security measures "served no investigatory purpose" and were therefore "not necessary to the investigation or prosecution of the offense." *See Maynard*, 743 F.3d at 381–82.

9

fall within [any] of the . . . categories of harm enumerated in § 3663A(b), restitution for these expenses was improper.") This Court is bound by *Maynard*. Thus, the Court concludes that because Congress did not provide authority for this Court to award the expenses sought for personal security enhancements, these expenses are not compensable under § 3663A(b)(1) of the MVRA.[4]

### B.     Causation

Even if the expenses for personal security enhancements for which Congresswoman Greene seeks restitution were a compensable loss of property under the MVRA, Defendant argues, the Government has not established that Defendant's conduct was the direct and proximate cause of that loss because she has been the subject of many threats from others before, during, and after the proceedings against Defendant. (Dkt. No. 62, at 1–2; Dkt. No. 65, at 2–3; Dkt. No. 79, at 1–3.) The Government argues that although Congresswoman Greene has been the target of other threats, Defendant's conduct was "the straw that broke the camel's back." (Dkt. No. 64, at 2–3; Dkt. No. 76, at 3–4.)

The MVRA requires that, where a defendant is convicted of an offense that is a "crime of violence" as defined in 18 U.S.C. § 16 and "in which an identifiable victim . . . has suffered a physical injury or pecuniary loss," the court "shall order . . . that the defendant make restitution to the victim of the offense." 18 U.S.C. §§ 3663A(a)(1), (c)(1). The MVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. 3663A(a)(2). "Thus, in determining to whom a defendant owes restitution, the statute requires the court (1) to identify the 'offense' of conviction and

---

[4] A court may also order restitution under 18 U.S.C. § 3663. *See Maynard*, 743 F.3d at 377. But the Government has not sought restitution under § 3663. In any event, the Court notes that § 3363(b) contains the same list of compensable expenses, with two inapplicable additions, as § 3663A(b).

(2) to ascertain whether the putative 'victim' was 'directly and proximately harmed' by the defendant's commission of that 'offense.'" *United States v. Goodrich*, 12 F.4th 219, 228 (2d Cir. 2021).

In evaluating causation, the MVRA's command that the "offense" of conviction must have "directly and proximately harmed" the victim requires the court to determine whether the defendant's offense was both the "cause-in-fact and proximate cause" of the victim's harm. *See Goodrich*, 12 F.4th at 229 (citing *Robers v. United States*, 572 U.S. 639, 645 (2014)); *United States v. Marino*, 654 F.3d 310, 323 (2d Cir. 2011)). For the defendant's offense to have been the cause-in-fact of the victim's harm, "the defendant's conduct must have been a necessary factor in bringing about the victim's harm," *Goodrich*, 12 F.4th at 229 (citing *Marino*, 654 F.3d at 322), or, in other words, "but for" the defendant's offense, the harm to the victim would not have occurred, *see Marino*, 654 F.3d at 322. "Regarding proximate cause, the Supreme Court has distilled the principle as follows: 'The basic question . . . is whether the harm alleged has a sufficiently close connection to the conduct,' which we evaluate based on whether that harm was 'foreseeable' to a defendant." *Goodrich*, 12 F.4th at 229 (quoting *Robers*, 572 U.S. at 645). That is, the court must "assess[] the proximate cause requirement under a 'foreseeab[ility]' standard," analyzing the record to determine whether the defendant "could have foreseen the extent of losses that the [defendant's conduct] was incurring." *See id.* (second alteration in original) (quoting *Marino* 654 F.3d at 323). "A requirement of proximate cause thus serves, *inter alia*, to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Paroline*, 572 U.S. at 445 (citing *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 838–839 (1996)).

At the outset, the Court notes the temporal dissonance between the Defendant's offenses (and subsequent release on pretrial conditions) and the personal security enhancements for which restitution is sought. *See Marino*, 654 F.3d at 319 ("Restitution should not lie if the conduct underlying the offense of conviction is too far removed . . . temporally[] from the loss." (quoting *United States v. Vaknin*, 112 F.3d 579, 589 (1st Cir. 1997)). Defendant's offenses of conviction occurred on March 3, 2022, and Defendant was released from custody on pretrial conditions on March 22, 2022. But Congresswoman Greene did not contact Echo Technologies until September 2022 and Bartow Fence until October 2022. Mr. Loudermilk suggested that this delay may have been a result of her staff researching whether campaign funds could be used to pay for personal security enhancements. But Mr. Loudermilk testified that her staff did not begin researching that issue until May or June 2022.[5]

Ultimately, there was a delay of between six and seven months between Defendant's offenses (and his subsequent release on pretrial conditions) and the dates the expenses were incurred: the security-camera reconfiguration was not undertaken until September 2022, and an estimate for construction of the fence was not produced until October 2022.

Furthermore, Defendant presented numerous instances of other threats, including direct death threats, beginning as early as September 23, 2020, nearly a year and a half before Defendant's offenses, and continuing until at least February 2023, nearly a year after Defendant was released from custody on pretrial conditions. Congresswoman Greene's social media posts about the frequency with which she received threats are corroborated by Mr. Loudermilk and Mr. Willis, who each stated that she received multiple threats every day. In addition, there were two

---

[5] Mr. O'Brien testified that he found the relevant Federal Election Commission advisory opinion in a quick internet search. The Government did not respond to this point. In any event, a finding on that issue is not necessary to resolve the causation issue here.

other criminal proceedings, in addition to Defendant's, involving specific threats against Congresswoman Greene. The Colorado proceeding involved an indictment in August 2022—one month before Congresswoman Greene began making enhancements to her Georgia residence's security system. Although Mr. Loudermilk testified that Defendant's offenses were more concerning because they were specific to Congresswoman Greene while the Colorado defendant threatened multiple Representatives, Mr. Loudermilk also testified that he, and therefore Congresswoman Greene, was unaware at the time of the indictment in that case that anyone other than Congresswoman Greene had been threatened.[6]

The Court has carefully considered the testimony of Mr. Loudermilk. But even crediting that testimony, in light of the delay in undertaking the personal security enhancements at issue here, the volume of threats Congresswoman Greene received, and the other specific incidents involving her—including the incident involving the individual leaving an unsolicited package at her Georgia residence and at least one other direct threat and subsequent criminal proceeding that occurred the month immediately preceding the month in which she undertook the personal security enhancements—the Government has not established by a preponderance of the evidence that Defendant's offenses were the direct and proximate cause of Congresswoman Greene's personal security expenditures. That is, the Government has failed to establish by a

---

[6] The Government argues that these other threats do not demonstrate a lack of causation and render restitution unavailable because, under *Paroline*, 572 U.S. at 458–59, restitution is proper "where a defendant caused harm, but there was also continual harm by others." (Dkt. No. 76, at 3.) But *Paroline* dealt specifically with an order of restitution not under the MVRA but under a wholly separate statute, 18 U.S.C. § 2259, which is applicable only to orders of restitution in cases involving certain offenses of sexual exploitation and other abuses of children. *See* 18 U.S.C. § 2259(a); *see also Paroline*, 572 U.S. at 458 ("*In this special context*, . . . a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." (emphasis added)). That statute does not include a requirement that the offense be the direct, "but for" cause of the victim's loss, *see Paroline*, 572 U.S. at 457; 18 U.S.C. § 2259(c)(4), as does the MVRA, *see Goodrich*, 12 F.4th 219, 228; 18 U.S.C. § 3663A(2). Nor does § 2259 contain the same exhaustive list of compensable harms as does the MVRA. *See* 18 U.S.C. § 2259(c)(2); *id.* § 3663A(b). Thus, the Government's argument based on *Paroline* is unpersuasive.

13

preponderance of the evidence that Defendant's "conduct [was] a necessary factor in bringing about" Congresswoman Greene's expenditures for personal security enhancements, *see Goodrich*, 12 F.4th at 229, or that "but for" Defendant's offenses of conviction, she would not have undertaken the personal security enhancements, *see Marino*, 654 F.3d at 322. And the Government has failed to establish by a preponderance of the evidence that her expenditures bear "a sufficiently close connection to" Defendant's offenses of conviction, *see Goodrich*, 12 F.4th at 229 (quoting *Robers*, 572 U.S. at 645), such that "the causal link" between Defendant's conduct and Congresswoman Greene's expenditures is not "attenuated," *see Paroline*, 572 U.S. at 445. Accordingly, restitution would be improper under 18 U.S.C. § 3663A. *See Goodrich*, 12 F.4th at 229; *Marino*, 654 F.3d at 322.

IV.   **CONCLUSION**

For these reasons, it is hereby

**ORDERED** that the request for restitution is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 14, 2023
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge